# Dimeling, Appellant, *v.* Buffalo, Rochester & Pittsburg Railway Company.

*Contract—Oral contract—Insufficiency of language to establish contract—Railroad.*

In an action against a railroad company to recover a rebate of $3.00 per car on material furnished to the railroad for transportation, it appeared that the plaintiffs and the railroad company had jointly built a branch road connecting with the plaintiffs' lumber operation, and that the plaintiffs had been reimbursed for their outlay by an arbitrary charge of $3.00 upon each carload of material shipped over the branch, and imposed by the company upon the connecting carrier. Subsequently plaintiffs acquired other and more distant timber land, and built a tram road at their own expense to reach these lands. Plaintiffs claimed that the defendant had orally agreed to pay to them $3.00 for each car of material delivered from this tram. The plaintiffs testified that they desired the defendant to furnish the iron for the extension, but that this was refused by the officials of

the company with whom they had conference.   One of the plaintiffs testified "they asked us why we would not be satisfied with the same arrangement they had with C, that they paid him three dollars a car for all the product he built roads to and delivered to the road.   We accepted it and went on and bought the timber and built our road and furnished them all the freight."   Another of the plaintiffs testified "The only thing they could do they might make such arrangement as they had with C, which was three dollars a car."   The second witness was further asked "what was agreed on that day as to how much they would pay you for each product that came out of this timber."   To this he answered "three dollars."   *Held,* that the evidence was insufficient to establish the contract set up by the plaintiffs.

Argued April 17, 1906.   Appeal, No. 117, Jan. T., 1906, by plaintiffs, from judgment of C. P. Clearfield Co., May T., 1903, No. 146, on verdict for defendants non obstante veredicto in case of Dimeling & Co. v. Buffalo, Rochester & Pittsburg Railway Company.   Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Assumpsit on an alleged oral contract.   Before AUTEN, J. The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $9,324.   Subsequently the court entered judgment for defendant non obstante veredicto upon the whole record.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*David L. Krebs,* with him *A. M. Liveright,* for appellants.— The agreement made June 10, 1897, was valid and binding if the defendants' agents had the power to contract : Hoover v. R. R. Co., 156 Pa. 220 ; Interstate Commerce Commission v. R. R. Co., 145 U. S. 263 (12 Sup. Ct. Repr. 844) ; Interstate Commerce Commission v. R. R. Co., 168 U. S. 144 (18 Sup. Ct. Repr. 45) ; Texas, etc., Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197 (16 Sup. Ct. Repr. 666) ; Bank of Columbia v. Patterson, 11 U. S. 299 ; Bank v. Bank, 18 U. S. 326 ; Fleckner v. Bank of U. S., 21 U. S. 338 ; Gottfried v. Miller, 104 U. S. 521.

*Thos. H. Murray,* with him *C. H. McCauley, Jas. P. O'Laughlin* and *Hazard Alex. Murray,* for appellee.—There was no sufficient proof of any completed contract: Maitland v. Wil-

cox, 17 Pa. 231; Brown v. Finney, 53 Pa. 373; Penn Twp.
School Dist. v. Snyder, 5 Pa. Superior Ct. 228; Allegheny
County Workhouse v. Moore, 95 Pa. 408; Bangor, etc., Ry.
Co. v. Slate Co., 203 Pa. 6; Patton v. Ligonier Coal Co., 12
Pa. Dist. Rep. 456; Davis v. Old Colony R. R. Co., 131
Mass. 258.

OPINION BY MR. JUSTICE STEWART, May 24, 1906:

For mutual advantage and by joint effort, pursuant to a
written contract between them, the parties to this controversy
constructed a branch railroad one mile in length, connecting an
extensive lumber operation in which the appellants were then
engaged, with the appellee's main line of railroad. This branch
was owned and operated by the appellee. Appellants were re-
imbursed for their outlay in the construction thereof by an ar-
bitrary charge of $3.00 upon each car load of material shipped
over the branch, and imposed by appellee on the connecting
carrier. To further facilitate the work in which the appellants
were engaged, they constructed at their own expense a tram
road for the purpose of transporting logs to their sawmill
and wholly independent of the appellee. This road they op-
erated themselves. Subsequently they acquired other timber
land, still further removed from the line of the railroad, and to
manufacture and market the timber produced therefrom they
extended the log or tram road some three or four miles further.
It is this latter extension that gave rise to the present contro-
versy. The appellants, plaintiffs below, alleged a verbal con-
tract with the defendant company, here the appellee, whereby
the latter agreed, in consideration of the building of such ex-
tension, and delivering to the railroad company for transporta-
tion, all the product from this new operation, to allow and pay
to appellants $3.00 for each car of material so delivered. The
action was to recover from defendant this rebate on 3,398 car
loads of material so delivered and shipped over the branch and
main line of defendant's road. In submitting the case to the
jury the point was reserved whether there was any evidence in
the case that would entitle the plaintiff to recover. A verdict
was entered in favor of plaintiffs for the full amount of their
claim; but on the point reserved judgment non obstante vere-
dicto was entered for defendant.

The contract averred by plaintiffs and on which their claim is based, must be derived, if at all, from the conversation that occurred between Dimeling and Lee, two members of the plaintiff firm, and certain officers of the defendant company, as related by the former. It is not contended that this was supplemented by anything that subsequently occurred, except by way of recognition and ratification. The contract if made, was made then and there. The conversation was at a time and place appointed, but whether for this particular purpose or another does not appear. The parties present were Dimeling and Lee representing the plaintiff, and certain officials of the defendant company, General Superintendent Merchant, and General Freight Agent Davis. The testimony of Dimeling relating to what occurred was as follows: " We asked Mr. Merchant and Mr. Davis to furnish us iron, loan us iron to get the additional timber that we intended to buy. They met us with a counter proposition, and asked us why if we wouldn't be satisfied with the same arrangement they had with Cass Carrier, and that they paid him three dollars a car for all the product he built roads to and delivered to their road. We accepted it." The other witness Lee, testified as follows: " We had hoped to be able to get rail and fastenings to build a tram road for the purpose of hauling in the timber and bark, and have the same arrangement for them to furnish that rail to haul the lumber and bark, the timber or logs and bark to the mill, and we asked them to furnish the rail, we didn't want to put the money into the rail. They wouldn't do that, said they couldn't do that, and the only thing they could do they might make such arrangement as they had with Mr. Cass Carrier, which was three dollars a car." The several questions elaborately argued upon the hearing of this appeal are all subordinate to the main question, whether there can be derived from the conversation as testified to by these witnesses, the essential elements of a contract. The plaintiff's case rested upon an alleged express verbal contract. We have recited above all the testimony offered to establish such contract. It is apparent from the testimony of both these witnesses that what plaintiffs had in mind in meeting with the officials of the defendant company, was to secure from them the necessary rails and fastenings for their projected road, the building of which was wholly

conditioned upon their ability to secure the timber land they had in view. Evidently the purpose in this regard failed. It. is important only as it precedes and leads up to what is insisted upon as an actual contract. " They met us with a counter proposition and asked us why if we wouldn't be satisfied with the same arrangement they had with Cass Carrier, that they paid him three dollars a car for all product he built roads and delivered to their road. We accepted it." This is the testimony relied upon to establish the specific contract. What was this counter proposition ? The witness says there was such a counter proposition, but is silent as to what it was. What follows immediately upon this statement of the witness as coming from the officials, might explain what the witness himself meant by a counter proposition, but it was not in fact a proposition ; not an offer to pay $3.00 for each car load of product shipped, but a question addressed to the other side as to whether such an arrangement met their demands. It is impossible to give it any other than a tentative signification. In itself it implied no engagement, created no liability, and being no offer, required no retraction. The witness says : " We accepted it." An offer and acceptance may constitute a contract, but then again, they may not, depending upon the terms in which the offer is expressed, and upon how, to whom, and when the acceptance is indicated. Not only does the testimony of this witness fail to show a distinct and intelligible offer or proposal on the part of the railroad officials, but it discloses nothing in regard to the conversation from which a sufficient, binding acceptance could be inferred. To say it was accepted comes to nothing in such an issue as this, where the fact of the binding contract having been entered into is the very point in dispute. Was the acceptance then and there communicated to the other side? ; if it was, how was it ? Was the acceptance qualified or unconditional ? Since it was all verbal, what language was used ? The contract, if there was one, could only be derived from this conversation. Before the plaintiffs could be entitled to a submission of the question of contract, it was incumbent upon them to show what the conversation was out of which it was claimed to have arisen, in such detail as to establish a prima facie case, both with respect to a definite proposition and the reciprocal assent of. the parties. The testimony of this

witness establishes a prima facie case with respect to neither of these essentials. The testimony of Lee, the other witness, falls just as far short. Indeed, the testimony of this witness puts it beyond question, that what the witness called a counter proposition, was nothing but a suggestion of a possible basis of agreement. His language was : " We asked them to furnish the rail: we didn't want to put the money into the rail. They wouldn't do that, and the only thing they could do they might make such an arrangement as they had with Cass Carrier." This is all of the conversation detailed by this witness, except that later the question was asked him: " What was agreed on that day as to how much they would pay you for each product that came out of this timber outside of the English tract?" To this he answered: " Three dollars." This question was not objected to; had it been, of course it would have been excluded. It was not for the witness to say what was agreed upon; it was for him to testify to a conversation between the parties from which the jury was to conclude what had been agreed upon in the way of contract, if anything. Whether anything was agreed upon depended on how the parties expressed themselves in reference to it. In saying that anything was agreed upon the witness was expressing a conclusion he himself derived from what was said and done; and in this he was attempting the function of the jury. Though the evidence was admitted, as the case is now presented, it must be disregarded, because it is a mere deduction of the witness which, however much it may have contributed to the result of the submission to the jury, can throw no light upon the question that was to be decided.

. As we have said, the manifest insufficiency of the testimony of these witnesses was not supplied by anything shown to have occurred subsequently. It was shown that the arbitrary of $3.00 was imposed by the defendant company upon connecting roads, and collected between the dates of June, 1897, and September, 1901, the period covered by plaintiff's several transactions; but this evidence gave no warrant for an inference that this arbitrary or rebate or whatever it be called, was exacted pursuant to a verbal contract. So far as plaintiff's case disclosed, it could as readily be referred to the earlier contract between the parties which admittedly, in express terms,

stipulated for such rebate for the purpose of reimbursement for expenditures in the construction of the original branch railroad. Our consideration of the evidence leads us to the conclusion that it falls short of establishing a prima facie case with respect to the contract alleged, and that no error was committed in entering judgment for the defendant on the point reserved. It is unnecessary to consider the other questions raised.

The judgment is affirmed.